IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MATTHEW T.[1], ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 7:19cv00807 |
| ) | |
| ANDREW SAUL, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

### REPORT AND RECOMMENDATION

Plaintiff Matthew T. ("Matthew") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; R. 355–56. Matthew alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) assess his treating physician's opinions; (2) determine his RFC using a function-by-function analysis; and, (3) assess his allegations regarding his symptoms.

I agree that the ALJ failed to provide a sufficient explanation for the weight given to the treating physician's opinion. Accordingly, I **RECOMMEND GRANTING in part** Matthew's Motion for Summary Judgment (Dkt. 15), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 20) and **REMANDING** this matter for further administrative consideration.

### STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

support the Commissioner's conclusion that Matthew failed to demonstrate that he was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citations omitted).

## CLAIM HISTORY

Matthew protectively filed for DIB on September 19, 2016, claiming his disability began on April 7, 2016, due to avascular necrosis, shoulder pain, breathing problems, and chronic fatigue syndrome. R. 352–55, 357, 379. Matthew's date last insured is December 31, 2020; thus, he must show that his disability began on or before this date and existed for twelve continuous

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

months to receive DIB. R. 151, 375; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Matthew's applications at the initial and reconsideration levels of administrative review. R. 1–7; 224–32; 233; 234–42; 243 244–48. On July 17, 2018 ALJ Geraldine Page held a hearing to consider Matthew's claims for DIB.[3] R. 180–211. Counsel represented Matthew at the hearing, which included testimony from vocational expert Asheley Wells. R. 202–07. On October 30, 2018, the ALJ entered her decision analyzing Matthew's claims under the familiar five-step process[4] and denying claims for benefits. R. 144–74.

The ALJ found that Matthew was insured at the time of the alleged disability onset and that he suffered from the severe impairments of obesity, avascular necrosis following a total hip replacement and degenerative disc disease of the lumbar spine.[5] R. 152. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 156. The ALJ specifically considered listing 1.02 (major joint dysfunction), 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), and 1.04

---

[3] ALJ Richard Swartz previously denied Matthew's claim for disability on March 29, 2007. R. 212–23.

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] The ALJ found that Matthew's temporary medical problems, e.g. boil or abscess on the neck, chest pain, acute bronchitis, chest congestion, and sinusitis, did not meet the durational requirements of a severe impairment. R. 152. Likewise, the ALJ found that Matthew's hypertension, irritable bowel syndrome, and temporomandibular joint disorder were controlled with medication and were not severe. Id. The ALJ also found that Matthew's chronic fatigue syndrome, right shoulder pain, and right knee pain were non-medically determinable either because there was no treatment, or he did not allege the condition as an impairment when he filed his claim. R. 152–53.

3

(disorders of the spine). Id. at 156–57. The ALJ also considered SSR 02–1p.[6] See Titles II and XVI: Evaluation of Obesity, SSR 02–1p (S.S.A. September 12, 2002).[7] Id. at 157. The ALJ found that Matthew's "alleged problems with concentration and memory due to his pain medications or high blood pressure, considered singly and in combination, do not cause more than minimal limitation in [his] ability to perform basic mental work activities." Id. at 153. Specifically, the ALJ found that Matthew had no limitations in understanding, remembering, or applying information, interacting with others, concentrating, persistence, or maintaining pace, and adapting or managing oneself. Id. at 153–55.

The ALJ concluded that Matthew retained the residual functional capacity ("RFC") to perform sedentary work. R. 157. Specifically, he found that Matthew can lift or carry ten pounds occasionally and five pounds frequently, and he can frequently reach overhead. Id. Matthew can stand for two hours, walk for two-hours, and sit for six hours in an eight-hour workday. Id. Matthew can push or pull occasionally with his lower extremities, but he cannot operate foot controls with his right foot. Id. He can occasionally balance, kneel, stoop, crouch and climb ramps or stairs, but he can never crawl or climb ladders, ropes or scaffolds. Id. Matthew needs the opportunity to change posture when sitting every two hours briefly and in place without leaving the workstation unless on an authorized break or lunch. Id. He needs to avoid concentrated exposure to extreme temperatures, excess humidity, and pulmonary irritants. Id.

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

[7] In May 2019, the Social Security Administration rescinded and replaced SSR 02-1p with SSR 19-2p. Soc. Sec. Ruling 19-2 Titles II and Xvi: Evaluating Cases Involving Obesity, SSR 19-2p, 2019 WL 2374244 (S.S.A. May 20, 2019). The ALJ issued the decision in this case in October 2018, before the new rule. The old rules contained in SSR 02-1p therefore apply. See Williams v. Saul, No. 1:19-cv-983, 2020 WL 5802707, at *5 n.2 (E.D. Va. Sept. 29, 2020).

Matthew needs to avoid all exposure to hazardous machinery, working at unprotected heights, and working on vibrating surfaces. Id. The ALJ determined that Matthew is unable to perform any of his past relevant work, but that he could perform jobs that exist in significant numbers in the national economy, such as assembler, weight tester, and address clerk. R. 171–73. Thus, the ALJ determined that Matthew was not disabled. R. 173. Matthew appealed the ALJ's decision and the Appeals Council denied his request for review on October 21, 2019. R. 1–4.

## ANALYSIS

Matthew alleges that the ALJ failed to properly assess his treating physician's opinions, determine his RFC using a function-by-function analysis, and assess his allegations regarding his symptoms. Pl.'s Br. at 20–32, Dkt. 16. Matthew complains of hip pain and associated leg and groin pain that persisted even after his December 2016 right hip replacement. See, e.g. R. 542. Matthew also complains of back pain, which he first described to his treating physicians in 2017. See, e.g., R. 756.

### A. Medical History Overview

Physical Impairments

Matthew complained of right hip pain to his treating physician Souha Khawam, M.D., beginning before his alleged onset date. See, e.g., R. 460–61. After regular complaints, Plaintiff began treating with Jesse Seamon, M.D., an orthopedic surgeon. See, e.g., R. 458–59. On Matthew's alleged onset date, Dr. Seamon performed a core decompression of the hip in April 2016. See, e.g., R. 448–49. Though this surgery initially provided some relief, see R. 444, Matthew continued to report pain. R. 437–39. Dr. Seamon diagnosed Matthew with avascular necrosis of the right hip and recommended total hip replacement. R. 439.

Thomas Shuler, M.D., performed Matthew's right hip replacement on December 9, 2016. R. 690. Matthew regularly attended appointments with Dr. Khawam and Dr. Shuler after this date, noting somewhat inconsistent progress and pain relief. See, e.g., R. 551, 587, 696, 702, 722, 729, 748. Dr. Shuler consistently found that the components of the hip replacement were good. See, e.g., R. 696. Nevertheless, he also concluded that Matthew did not make as much progress in increasing his strength as expected and regularly noted that Matthew failed to engage in physical therapy. See, e.g., 713–14.

In addition to this hip and associated leg and groin pain, Matthew began complaining of back pain in late 2017 and 2018. He was referred to David Prior, M.D., in June 2018 for a lumbar spinal surgical evaluation. R. 756. Dr. Prior diagnosed Matthew with degenerative disc disease. Id. Dr. Prior recommended that Matthew engage in "home exercises" despite Matthew's claim that he was in too much pain to complete physical therapy. R. 761. Matthew continued to complain of back pain at his appointments with Dr. Khawam.[8]

Medical Opinion Evidence

Two state agency doctors offered medical opinions prior to Matthew's hip replacement surgery. In October 2016 state agency doctor Lewis Singer, M.D., reviewed the record and found that Matthew was capable of sedentary work. R. 231. He further found that Matthew, in an eight-hour workday, could occasionally and frequently lift or carry ten pounds, could stand or walk for two hours, and could sit for six hours. R. 228–29. The ALJ gave Dr. Singer's opinion significant weight. R. 166. In November 2016, state agency doctor William Rutherford, Jr., M.D., reviewed the record also finding that Matthew was capable of sedentary work, noting the same exertional

---

[8] Matthew attended several chiropractic appointments in early 2019. He reported some relief from these appointments. R. 10–16. Dr. Khawam also referred Matthew to a pain management clinic, but he ultimately declined. R. 766, 767.

6

limitations as Dr. Singer. R. 238–42. The ALJ gave significant weight to Dr. Rutherford's opinion. R. 166.

Dr. Khawam completed two medical source statements addressing Matthew's physical limitations. R. 507–10, 737–41. Dr. Khawam's February 2017 opinion stated that Matthew could occasionally lift or carry ten pounds, frequently lift or carry less than ten pounds, stand or walk for less than two hours a day, sit for less than two hours a day, and would require a total cumulative six-hour resting time in an eight-hour workday. R. 507–08. He additionally noted that Matthew had several postural, manipulative, and environmental limitations. Dr. Khawam finally noted that Matthew would be absent more than three times a month. Id. Dr. Khawam's June 2018 opinion was similar, noting more restrictive lifting and carrying limitations and some additional postural, manipulative, and environmental limitations. R. 737–41. He again found that Matthew could stand, walk, or sit for less than two hours a day and that Matthew would be absent three or more days a month. The ALJ gave some weight to Dr. Khawam's opinion. R 167–68.

### B. Treating Physician

Matthew argues that the ALJ erred by failing to give controlling weight to Dr. Khawam's medical opinions. Pl.'s Br. at 22, Dkt. 16. He specifically argues that the ALJ mischaracterized the evidence underlying Dr. Khawam's opinions and that "the ALJ appears to only accord some weight to [his opinions] because they are inconsistent with the ALJ's RFC findings." Id.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in

7

[the] case record."[9] 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011).

Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09–cv–622, 2010 WL 6621693, at *10 (E.D.Va. Dec. 29, 2010). However, the ALJ "need not mechanically discuss every factor when choosing to afford a treating physician's opinion less weight, as long as the ALJ articulates the reasoning behind the

---

[9] The social security regulations regarding the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c (setting out rules for claims filed on or after March 27, 2017, including that no specific evidentiary weight, including controlling weight will be given to any medical opinions). However, as this claim was filed prior to the effective date of the amended rule, I will apply the rules in 20 C.F.R. §§ 404.1527(c), 416.927.

8

decision." Haass v. Comm'r, Soc. Sec. Admin., No. CV BPG-17-1639, 2018 WL 2118705, at *1 (D. Md. Apr. 4, 2018).

Here, the ALJ did not appropriately consider these factors, or the record, in determining that the opinions of Dr. Khawam merited only some weight. The ALJ acknowledged that Dr. Khawam was Matthew's "primary care provider and [that he] prescribed medications for [him] at regular appointments every few months for his chronic health issues," but she ultimately discounted Dr. Khawam's opinions on the basis that they were inconsistent with the record, noting that "[his] assessment was somewhat more restricted than warranted."[10] R. 167–68. The ALJ cited no specific inconsistencies but appears to have based this conclusion on inconsistencies with Dr. Khawam's report and that of the state agency doctors, whom the ALJ gave significant weight.[11] See R. 166–69; see Pearson v. Colvin, No. 4:12–cv–23, 2013 WL 3243550, at *4 (E.D.N.C. June 26, 2013) (An ALJ's conclusion that an opinion was "out of proportion to the longitudinal and objective record" is merely conclusory and lacks any meaningful factual comparisons). As Matthew argues, the state agency doctors' opinions were

---

[10] The ALJ also specifically relied on evidence that Matthew failed to engage in physical therapy and that Dr. Khawam's opinions were at least partially based on Matthew's subjective complaints. Regarding failure to engage in physical therapy, it is the ALJ's obligation to develop a record which established by substantial evidence that the treatment would have reasonably remedied Matthew's condition. See Gull v. Barnhart, No. 5:05–cv–85, 2006 WL 1982769, at *7 (W.D. Va. July 14, 2016). Regarding Dr. Khawam's reliance on subjective complaints, the Commissioner argues that the ALJ correctly concluded that Dr. Khawam's opinions were based on Matthew's subjective complaints. Comm'rs Br. at 15, Dkt. 21. While Dr. Khawam's February 2017 report notes that several answers were "per patient," R. 507, the June 2018 report states that Dr. Khawam completed the form "by interviewing the patient and reviewing the records as well as with knowledge of the patient." R. 737. While the ALJ properly considered this, it is not evident that the opinions were primarily based on subjective complaints (nor does the ALJ appear to conclude as much given that he based his reasoning on more than this point). R. 168; see also Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (suggesting less weight may be given to a treating physician opinion that is *primarily based* on subjective complaints) .

[11] After stating that Dr. Khawam's "assessment was somewhat more restricted than warranted," the ALJ immediately noted (without explanation) that "[Matthew] could sit for six hours instead of two hours in an eight-hour workday. He would also not need to rest, lie down, or recline in a supine position for more than six hours in an eight-hour workday . . . He could occasionally instead of never kneel or crouch." R. 168. These conclusions are nearly identical to the state agency doctors' opinions and mirror the ALJ's RFC. See R. 166. There is no direct indication why these limitations are more consistent with the record than Dr. Khawam's.

9

authored in October and November 2016, before his December 2016 right hip replacement and "the addition of additional medical treatment and notes to the record." See Pl.'s Br. at 24, Dkt. 16. Though the ALJ appeared to recognize that these opinions were written before Matthew's right hip replacement,[12] she did not specifically explain how these opinions were consistent with Matthew's later hip replacement or the onset of his back pain in 2017 beyond noting that the opinions were "generally consistent with the medical evidence of record."[13] R. 166–67; see also Little v. Comm'r, No. SAG–13–3328, 2015 WL 1038101, at *3 (D. Md. Mar. 9, 2015) (remanding ALJ decision that gave significant weight to medical opinions written prior to claimant's hospitalization in part based on failure to address whether there were changes in claimant's condition); Hoptowit v. Colvin, 2015 WL 1289834 (W.D. Wash. Mar. 20, 2015) (finding no error where ALJ relied on opinions written prior to back surgery where plaintiff showed *no* change in symptoms). Additionally, while the ALJ consistently described "improvement" in Matthew's hip and back when he "followed prescribed treatment," she cited no specific evidence to support this claim.[14] See R. 168. Moreover, the medical record reflects that Matthew, while initially noting improvement, consistently complained of hip pain beginning several months after his right hip replacement, and even suggested that his pain worsened over time. See, e.g., R. 129, 551–52, 565–66, 586–87, 672, 676, 707, 713, 766–67. The objective

---

[12] The ALJ likely recognized that these opinions were written prior to Matthew's hip replacement as she stated that "the limitations on climbing and exposure to heights were consistent with the normal recommendations after a hip replacement" R. 166–67. This suggests that the ALJ believed that the state agency opinions would be consistent with Matthew's status post-surgery. R. 166–67.

[13] The ALJ specifically cites exhibits B1F to B11F to support her statement that the state agency doctors' opinions were consistent with the medical evidence. It is worth noting that the vast majority of the cited records concern Matthew's treatment after his December 2016 hip replacement. See R. 507–11, 512–682, 683–736, 737–42, 743–55, 756–65, 766–77, 778–779. While it is possible for an earlier opinion to be consistent with later records, additional analysis is needed especially where, as here, Matthew's symptoms were not absolutely consistent.

[14] In reviewing the medical evidence the ALJ cited to Matthew's March 8, 2017 appointment with Dr. Shuler where he reported some improvement. See R. 162, 702.

10

evidence shows similarly inconsistent improvement post-hip replacement. See, e.g., R. 702, 713–14 (showing some weakness related to Matthew's right hip in his quads or abductor and adductor strength). Regarding Matthew's back pain, the record shows both that Matthew began complaining of pain in 2017 and that his physicians noted some degenerative changes in his back around that time. See, e.g., R. 136, 720, 761, 779.

I recognize that it is not my function to conduct a blank slate review of the evidence by reweighing conflicting evidence or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F. 3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for her opinion. Here, the ALJ did not adequately weigh the conflicting evidence, specifically Dr. Khawam's opinion, and the ALJ did not clearly explain her reasoning. At bottom, the ALJ did not adequately explain her decision to discount Dr. Khawam's opinions on Matthew's limitations, including because she did not adequately consider the factors outlined in 20 C.F.R. § 416.927(c)(2). See Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion") (quotation omitted); Patterson v. Comm'r, 846 F.3d 656 (4th Cir. 2017) (admonishing ALJ's to "show your work"). Accordingly, I conclude that substantial evidence does not support the ALJ's decision to discount the opinions of Dr. Khawam.

Because I find that remand is warranted based on the ALJ's failure to adequately explain her decision to discount Dr. Khawam's opinions, Matthew's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

## CONCLUSION

For the foregoing reasons, I **RECOMMEND GRANTING in part** Matthew's motion

for summary judgment, **DENYING** the Commissioner's motion for summary judgment, and **REMANDING** this case for additional consideration under sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to transmit the record in this case Elizabeth K. Dillon United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: February 4, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge